J. Davenport, late trading as Davenport Company, Appellant, *v.* the Pennsylvania Railroad Company.

*Common carriers—Limited liability clause—Burden of proof of negligence—Province of court.*

Under a liability clause, limited to negligence of a carrier's servants, where there is no evidence of delay, accident or lack of care during the transportation of a carload of perishable fruit and vegetables shipped in very hot weather, the burden being upon the plaintiff, the trial judge was justified in directing a verdict in favor of the defendant.

It is not sufficient, in order to sustain a verdict, that the plaintiff prove that the fruit became rotten before it was delivered at its destination. He must prove a failure to forward with reasonable despatch or other facts justifying a finding of negligence and that the negligence caused the damage complained of.

Argued Oct. 18, 1898.   Appeal, No. 151, Oct. T., 1898, by plaintiff, from judgment of C. P. No. 1, Phila. Co., June T., 1896, No. 1386, on verdict for defendant.   Before RICE, P. J., REEDER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ.   Affirmed.   Opinion by W. D. PORTER, J.

Assumpsit.   Before BEITLER, J.

It appears from the record and evidence that this is a suit to recover $338.76 for loss upon a lot of pineapples and cabbages shipped by plaintiff from Philadelphia to Altoona on June 11, 1892, over the Pennsylvania Railroad, with interest from June 14, 1892.   There was evidence tending to show that the fruit and cabbage were sound when shipped but that when they reached Altoona and were ready for delivery they were heated, rotted and unmarketable.   The testimony shows that they arrived at Altoona in due and reasonable time and that the car stood on the siding for several hours waiting for the invoice or manifest and that the freight agent at Altoona would not open the doors of the car until the arrival of such manifest.   Defendant offered no evidence but rested upon the following clause printed on the back of the bill of lading :

" The carrier shall not be liable for loss or damages by causes beyond its reasonable control, by fire or explosion from any cause and wheresoever occurring ; by riots, strikes or stoppage

of labor, or by any of the causes incident to transportation, such as chafing, heating, freezing, leakage, rust, or any other reason not directly traceable to the negligence of the carrier's servants."

In 1892 the cause was tried in common pleas, No. 4, Philadelphia county, upon the theory that defendant was bound to ship fruit in summer in a special car called ventilated cars. The court below entered a nonsuit on the ground that under the terms of the bill of lading, the carrier not being liable for loss by heating, chafing, etc., was not bound to ship in a ventilated car without special contract. This was affirmed on appeal, the decision being reported in 173 Pa. 398.

The trial judge affirmed the defendant's point, which was, " Under all the evidence the verdict must be for the defendant."

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in affirming defendant's point for charge, reciting same.

*Horace M. Rumsey,* for appellant.—The entry of a nonsuit has nothing to do with this case. It has no bearing. It is of no moment. The heart of the case is found in these propositions :

(*a*) That if goods be sound and healthy when shipped, and arrive at their destination in a damaged condition, and no explanation is given by the carrier as to how the injury occurred, then a presumption of negligence arises against the carrier, which is sufficient to send the case to a jury and justify a recovery, even if there be a clause in the contract exempting the carrier from loss or damage by reason of any of the causes incident to transportation, such as chafing, heating, etc.

(*b*) That even if the said presumption against the carrier does not arise by reason of said clause in the contract exempting it from liability, yet if affirmative proof of the carrier's negligence is adduced, the case must be sent to the jury to decide the facts and the inferences.

It is submitted that if goods be sound and healthy when shipped, and arrive at their destination in a damaged condition, and no explanation is given by the carrier as to how the injury occurred, then a presumption of negligence arises against the carrier, which is sufficient to send the case to a jury and justify

a recovery, even if there be a clause in the contract exempting the carrier from loss or damage by reason of any of the causes incident to transportation, such as chafing, heating, etc.: Express Co. v. Sands, 55 Pa. 140; Pot Works v. Railroad Co., 139 Pa. 284; Ruppel v. Railway Co., 167 Pa. 166; Buck v. Railroad Co., 150 Pa. 170.

The clause relied upon by the appellee has been well defined in the language of Mr. Justice WILLIAMS in Willock v. Railroad Co., 166 Pa. 184. See also Allam v. Railroad Co., 3 Pa. Superior Ct. 335, where SMITH, J., considers such stipulations. See also Leidy v. Quaker City Cold Storage Co., 180 Pa. 323.

The principle above contended for has been affirmed in recent accident cases, and it has been held that the proof of the accident, the injury and the circumstances under which it occurred, is sufficient to raise a presumption of negligence and thus cast upon the defendant carrier, the burden of establishing its freedom from fault: Dampman v. R. R. Co., 166 Pa. 520; Dixey v. Traction Co., 180 Pa. 401.

But even if the said presumption against the carrier does not arise by reason of said clause in the contract exempting it from liability, yet if affirmative proof of the carrier's negligence is adduced, the case must be sent to the jury to decide the facts and the inferences.

The testimony shows the goods, which were perishable, were shipped in a sound condition, and arrived at Altoona, Pa., in a heated and rotted condition, having been detained on a railroad siding in a hot summer sun, in a car with closed doors, without protection, for five hours.

It was for the jury to decide if the loss was sustained by the negligence of the carrier's servant in not forwarding the " manifest " with the goods, and thus detaining the car for five hours in the hot sun without protection, on the siding.

The law will not permit a railroad company to limit its liability for loss to goods resulting from the negligence of the company or its servants. This is the express law in Pennsylvania: Grogan v. Express Co., 114 Pa. 523; R. R. Co. v. Raiordon, 119 Pa. 577; Forepaugh v. R. R. Co., 128 Pa. 217; Buck v. R. R. Co., 150 Pa. 170; Willock v. R. R. Co., 166 Pa. 184; Ruppel v. Ry. Co., 167 Pa. 166.

*John Hampton Barnes,* with him *Geo. Tucker Bispham,* for appellee.—The argument of the appellant asks this court to reverse the settled rule in this state, that a contract such as that contained in the bill of lading in this case shifts to the plaintiff in any action arising thereunder the burden of proof that the damage complained of was due to negligence of the carrier: Express Co. v. Sands, 55 Pa. 140; Grogan v. Express Co., 114 Pa. 523.

The testimony showed that the fruit was delivered to the defendant at its freight station in Philadelphia late Saturday afternoon, and that the car reached Altoona early on the morning of Monday following, a distance of 250 miles. The weather during those three days was very warm, the temperature being above ninety degrees. The car was opened and the cargo tendered to the consignee within three hours after its arrival at Altoona. It is submitted that the defendant could not have exercised greater diligence in the transportation of the car and the tender of the fruit to the consignee after notice of its arrival. It is therefore submitted that there is no evidence which would warrant the court in submitting to the jury the question of alleged negligence upon the part of the defendant, and that the order of the court refusing to take off the nonsuit was correct and should be affirmed.

OPINION BY W. D. PORTER, J., March 23, 1899:

The plaintiff shipped a lot of pineapples and ten barrels of cabbage over the line of the defendant company from Philadelphia to Altoona. The goods were shipped in the afternoon of Saturday, June 11, 1892, and arrived at their destination on Monday morning following, when the consignees refused to receive them because of their decaying condition. The shipping receipt contained a clause exempting the carrier from liability for loss or damage by causes beyond its reasonable control, " or by any of the causes incident to transportation such as chafing, heating, freezing, . . . . or any other reason not directly traceable to the negligence of the carrier's servants." The plaintiff brought this action against the carrier to recover for the loss resulting from the goods having, while in the care of the carrier, become heated, rotted and unmarketable. At the trial the plaintiff produced evidence tending to establish

the following facts, to wit: The goods were shipped in good condition on Saturday afternoon, on Monday the consignor was notified by telegraph that the goods were in bad condition and the consignee declined to receive them; the consignor did not care to turn the goods over to the consignees to be sold for his account, as he seems to have had doubts of their good faith in declining to accept, but he sent one of his employees from Philadelphia, who arrived in Altoona on Tuesday morning and met the freight agent of the defendant company with whom he had this conversation, as testified by plaintiff's agent: "I asked him about the fruit; he (the freight agent) said it was on the siding; that the consignee would not receive it. I said, 'Why won't they receive it?' He said 'It is in bad order.' I asked him how long the car had been there, and he (the freight agent) said the car arrived early Monday morning, but had stood there until some time between ten and eleven o'clock waiting for a manifest." Plaintiff's agent then took charge of the goods and sold them for the best price obtainable. The loss resulting from the rotting of the goods amounted to $379.90. The learned trial judge charged the jury that under all the evidence, the verdict must be for the defendant; which charge is now assigned for error.

In view of the fact that the Supreme Court has passed upon and sustained the clause, limiting the liability of the defendant in the shipping receipt which was the contract of the parties to this controversy; in a former action growing out of the same transaction, Davenport v. Pennsylvania R. R., 173 Pa. 398, it is unnecessary to discuss the power of a common carrier to limit his liability by the terms of a special contract, which power has been recognized in numerous cases, a few among the number being Beckman & Johnson v. Shouse, 5 Rawle, 179, Farnham v. Camden & Amboy R. R., 55 Pa. 53, Grogan & Merz v. Adams Express Co., 114 Pa. 523, Pennsylvania R. R. v. Raiordon, 119 Pa. 577, Ruppel v. Allegheny Valley R. R., 167 Pa. 166, and Willock v. Pennsylvania R. R., 166 Pa. 184.

If the defendant is to be held liable under this shipping contract it must be upon the ground of negligence; and the burden is upon the plaintiff to prove negligence in fact, or circumstances from which negligence might reasonably be inferred.

If the goods are lost by a carrier under such a special contract, a presumption of negligence arises from the loss during the course of transportation. If an injurious accident happens to, or by reason of, that which the carrier provides for the transportation, the law, which imposes upon him the exercise of the utmost care, presumes the accident to be due to the want of that care and puts upon him the duty of successfully relieving himself from that presumption. But the word accident must be understood as referring to such happenings as the exercise of proper care by the carrier could have prevented: Laing v. Colder, 8 Pa. 479; Pennsylvania R. R. v. Raiordon, 119 Pa. 577. In the latter case a horse was shipped under a special contract limiting the liability of the carrier to damages resulting from negligence; the plaintiff proved that the horse was shipped in good condition but was dead when the car arrived at its destination. The Supreme Court held that, in the absence of any evidence of the happening of an injurious accident the plaintiff was not entitled to recover.

When machinery or castings are broken during transportation by a carrier, under a special contract, that fact is evidence of negligence, but it is evidence only and must be considered by the jury along with all the other evidence in the case: Buck v. Pennsylvania R. R. Co., 150 Pa. 170. Where the injury to the property carried indicates violent, careless or improper transportation that fact is evidence of negligence and the case is for the jury. Where the loss or deterioration in value results from some element inherent in the property transported, and not shown to have some connection with the manner of transportation; such as the melting of ice or the rotting of fruit in very hot weather, such operation of a natural law is no evidence of negligence. When property of such nature is shipped, under a special contract of the character of that under consideration, it is not sufficient, in order to sustain a verdict, that the plaintiff prove that the fruit became rotten before it was delivered at its destination. He must prove a failure to forward with reasonable dispatch or other facts justifying a finding of negligence, and that the negligence caused the damage complained of.

In the case of Ruppel v. Allegheny Valley Ry., 167 Pa. 166, the plaintiff had shipped a carload of potatoes from Pittsburg

to Buffalo under a special contract limiting the liability of the carrier to damages resulting from negligence. There was evidence that the car had been delayed for three days on the defendant's line, and that the car was out of repair and defective and the delay resulted as a consequence. When the car arrived at its destination the potatoes had commenced to decay. Three witnesses, of experience in shipping and dealing in potatoes, testified that the condition of those potatoes, when the car was opened at Buffalo indicated that the decay had commenced within two or three days. It was there held: (1) That the evidence of delay was such as to warrant the court in submitting the question of negligence to the jury; (2) that there was sufficient evidence that this negligence caused the damage. In passing upon the second question, Mr. Justice DEAN, who delivered the opinion of the Supreme Court, based the decision upon the ground that, if the loss resulted from the potatoes not having been taken out of the car two or three days sooner, and those two or three days were beyond that reasonable time which under the circumstances the law allowed the carrier, the latter would be liable for the loss; and three witnesses of experience having testified that the condition of the potatoes when the car was opened at Buffalo indicated that decay had commenced within two or three days preceding, the evidence was sufficient to go to the jury.

In the present case there is no evidence of delay, accident or lack of care during the course of transportation. The statement filed by plaintiff alleges that the employees of defendant "allowed the car in which said cabbage and pineapples were contained, and in which they were shipped, to stand on its track at Altoona for more than four hours after its arrival in said place." The only evidence of delay to tender the goods to the consignees promptly after the arrival of the car at the point of destination, is what the freight agent is alleged to have said to plaintiff's agent, viz: "He said the car arrived early Monday morning, but stood there until some time between 10 and 11 o'clock, waiting for a manifest." If the car had stood thus an unreasonable length of time that fact would have been evidence of negligence proper for submission to the jury. In this case, however, the plaintiff offered no evidence as to the time when the car did or ought to have arrived at its

destination. It was impossible for court or jury to do more than guess at the length of time the car stood waiting for the manifest; it might have been there for four hours, or for one or two hours. The burden was upon the plaintiff to establish that his property was damaged through the negligence of the carrier. Even if the fact that the car was held for a short time at its destination, awaiting the manifest, was evidence of negligence, there is no evidence that the damage resulted from that negligence. There is no evidence as to when the heating and decay of the pineapples and cabbage probably commenced, nor of their probable condition at the hour of their arrival at Altoona. There is no evidence as to the extent to which decay had progressed at the time the consignees declined to receive the goods. The shipment was made during a period of very hot weather, the temperature being about ninety. The consignor declined to permit the consignees to dispose of the goods for his account, on the day of their arrival at destination, and caused them to be held until the next day, when his representative arrived and took charge of the matter. The goods were then in bad condition; to what extent was that condition attributable to the short delay on Monday morning, to what extent was it to be charged to the whole day's delay resulting from the action of plaintiff?

Upon the evidence submitted, no man could reach any intelligent conclusion as to whether holding the car for the short time on Monday morning resulted in any injury to its contents. As there was no evidence to sustain a verdict in favor of plaintiff, the learned judge very properly directed the jury to find in favor of defendant.

Judgment affirmed.