# United States Horse Shoe Co. *v.* American Express Company, Appellant.

*Common carriers—Express companies—Shipping livestock— Negligence—Proof—Presumption—Evidence—Opinion evidence— Contracts limiting liability—Failure to declare value—Schedule of rates—Failure to file—Presumptive notice.*

1. In suits against transportation companies for injuries to animate property, the injury may be of such nature as to indicate violent or careless handling in course of transportation, and where the facts are sufficient to warrant such an inference, the question may be submitted to the jury.

2. In an action to recover damages for injuries to a colt shipped by defendant company for plaintiff, the question of defendant's negligence was properly submitted to the jury where it appeared that the colt was kept over night by defendant company in a roughly constructed stall in the basement of a barn, which several witnesses testified was an unsafe and improper place, and it appeared by the testimony of one witness that there was a hole in the floor, into which the colt might have stepped, and when found the next morning the colt's hip was smashed and broken.

3. In such case it was proper for the court to admit an expression of opinion by witnesses as to the character of the place where the colt was kept, where it appeared that they had seen and were able to describe its condition.

4. In such case where the shipment constituted interstate commerce, the carrier could have limited its liability, but it cannot be held to have done so where the value of the article shipped was neither asked nor declared, merely because the schedule of rates filed with the interstate commerce commission based the rate of carriage upon the assumed value of the articles shipped, and the

rate paid was based upon the minimum valuation, where it did not appear that the schedule of rates was published at the point of shipment; the filing of the rates with the interstate Commerce Commission at Washington was not a sufficient compliance with the law to charge the shipper with notice.

5. In such case the bill of lading cannot be held to be a contract limiting the liability of the carrier to the minimum valuation of $50, where the shipper had no actual notice of the intention of the carrier to limit its liability, where no declaration of value was asked or made, and where the paragraph in the bill of lading, providing that the liability would be limited to the minimum valuation unless a greater value was declared was expressly stated in the bill of lading not to apply to the shipment of livestock.

*Failure to insert valuation in bill of lading—Error of agent.*

6. In such case, it was held that an offer by the defendant to prove that the failure to insert the valuation was due to an error of its agent at the point of origin of the shipment was properly refused, since such correction would in effect alter the terms of a written contract not upon the ground of a mutual mistake but because an agent is willing to say that he did not follow the instructions of his principal in preparing it for execution.

Argued April 26, 1915.    Appeal, No. 94, Jan. T., 1915, by defendant, from judgment of C. P. Erie Co., May T., 1914, No. 29, on verdict for plaintiff in case of United States Horse Shoe Company v. American Express Company.    Before MESTREZAT, ELKIN, STEWART, MOSCHZISKER and FRAZER, JJ.    Affirmed.

Trespass to recover damages for injuries to a colt. Before BENSON, J.

The opinion of the Supreme Court states the case.

Verdict for plaintiff for $1,916.70 and judgment thereon.    Defendant appealed.

*Errors assigned* were various instructions to the jury, answers to points and rulings on evidence.

*Charles F. Patterson,* for appellant.

*John S. Rilling,* with him *C. Arthur Blass* and *W. Pitt
Gifford,* for appellee.

OPINION BY MR. JUSTICE ELKIN, July 3, 1915:

Plaintiff delivered a mare and colt to defendant at
Milwaukee, Wisconsin, to be forwarded by express to
Erie, Pennsylvania. The animals arrived at the point of
destination on Sunday, were unloaded and placed in the
basement of a barn by the express company for safe
keeping until Monday, when delivery was tendered to
the consignee. When delivery was tendered it was dis-
covered that the colt was severely injured, its left hip
having been smashed and broken during the night while
it was lodged in a roughly constructed stall in the base-
ment of the barn. It is conceded that the colt, which
came of a celebrated strain of highly bred horses, had but
little if any value after the injury. Plaintiff declined to
accept delivery of the colt because of its injured con-
dition and brought this action to recover damages on
the ground of negligence. The jury found in favor of the
plaintiff for the value of the colt and appellant com-
plains of errors alleged to have been committed at the
trial.

The first contention pressed upon our attention is that
there was not sufficient evidence of negligence to war-
rant a submission of the case to the jury. It is strongly
urged by learned counsel for appellant that there was no
direct evidence as to how the accident occurred, nor to
indicate how the hip bone was broken, nor to show that
the colt had stepped into a hole in the runway behind
the stall, nor any other testimony from which it could
be reasonably inferred that the proximate cause of the
injury was anything done or left undone by the express
company. It is true there was no direct evidence as to
what caused the accident, but we cannot agree that there
was no testimony upon which to base a finding of negli-
gence in taking care of the colt. The express company
had charge of the colt when it was injured; it selected

the barn where the colt was kept temporarily during the night; the place thus selected must be regarded as an instrumentality under the control of the forwarding company for the purpose of making delivery; and when so considered it was for the jury to say whether it was reasonably safe for the purpose intended in the light of the evidence as to the condition of the basement. Several witnesses testified that the colt was put and kept in an unsafe and improper place, and one at least stated that there was a hole in the floor into which the colt might have stepped. The injury was of such a nature that it could not have resulted from natural causes, and in our opinion the evidence was sufficient to warrant an inference that the unsafe condition of the stall and basement was the proximate cause of the accident. In the case of animate property the injury may be of such a nature as to indicate violent or careless handling in course of transportation, and where the facts are sufficient to warrant such an inference, the question may very properly be submitted to the jury: Blackburn v. Adams Express Co., 43 Pa. Superior Ct. 276. It has been held in many cases that the mere happening of an injurious accident in the course of transportation raises, prima facie, a presumption of negligence, and throws upon the carrier the onus of showing that it did not exist: Delmont v. Adams Express Co., 53 Pa. Superior Ct. 506. In the case at bar the accident was an injurious one, and the injury of such a nature as to preclude the probability of its having resulted from natural causes. These facts clearly distinguish the present case from Penna. R. R. Co. v. Raiordon, 119 Pa. 577, so strongly relied on by appellant. But even in that case this court clearly stated the rule applicable to injurious accidents as contradistinguished from injuries resulting to property in transit where there is no evidence of what caused the accident and nothing to indicate any defects in the instrumentalities of transportation.

We cannot agree with the learned counsel for appel-

lant that the testimony of the so-called expert witnesses should have been excluded. These witnesses described the condition of the basement of the barn in which the colt was kept and expressed their opinion that it was not a safe and proper place for stalling purposes. We can see no valid reason why such testimony should be excluded. These opinions were based upon conditions which the witnesses saw and afterwards described for the information of the jury who passed upon the value of the testimony. If any authority is needed to' sustain these offers of testimony it will be found in Schæffer v. Philadelphia & Reading Railroad Co., 168 Pa. 209. As to the negligence of the defendant company, the case was for the jury, and we find no reversible error in the instructions complained of, nor in the manner of submission.

The main contention of appellant is that in the light of the Federal decisions the amount recovered should have been limited to $50. In other words that this is a case of limited liability, the amount to be determined upon the basis of the rate charged. It is urged, and with much force, that the plaintiff was bound by the rates and schedules filed by defendant with the Interstate Commerce Commission, and that the shipper not having declared any valuation at the time of shipment and having paid to the express company a charge based upon a minimum valuation of $50, is thereby precluded from recovering upon the basis of the actual value of the colt. This raises an interesting question and one as to which we are in some doubt. The Federal decisions control, and if the question had been passed upon in that jurisdiction in a case where the facts are the same as here presented, it would be necessary to accept that authority as final and conclusive. We entirely agree with learned counsel for appellant that under the decisions of the Supreme Court of the United States construing the Federal statutes a common carrier may limit its liability on interstate shipments even as against its own negligence:

Adams Express Co. v. Croninger, 226 U. S. 491. As applied to the facts of the present case, it is not a question of the right of appellant to limit its liability but whether it did so in fact. It is conceded by both parties to the controversy here that the shipper was not asked to and did not declare any value on the colt. Appellant contends that this makes no difference because the shipper is charged with knowledge that the rate of carriage is based upon the declared or assumed value of the article shipped, both from the bill of lading and from the schedule of rates filed with the Interstate Commerce Commission, and that the effect of the filing of the schedules makes the published rates binding upon shipper and carrier alike. To sustain these contentions the following cases are cited: Boston and Maine R. R. Co. v. Hooker, 233 U. S. 97; Atchison, Topeka & Santa Fe Railway Co. v. Robinson, 233 U. S. 173; Pierce v. Wells Fargo & Co., 236 U. S. 278. These cases and others of like import do sustain the general propositions of law relied on by appellant in the present case. While this is true we cannot regard them as necessarily binding and conclusive under the facts disclosed by this record. The schedule of rates was not published at Milwaukee, where the colt was received for shipment, at least there was no evidence to show such publication, and counsel for appellant seems to concede this as a fact in the argument of his case. The only contention made here in this respect is that the rates were filed with the Interstate Commerce Commission at Washington, and that this was a sufficient compliance with the law to charge the shipper with notice. The Act of Congress of June 20, 1906, known as the Carmack Amendment, provides inter alia as follows: "Such schedule shall be plainly printed in large type and copies for the use of the public shall be posted in two public and conspicuous places in every depot or office of such carrier where passengers or freight respectively are received for transportation, in such form that they shall be accessible to the public

and can be conveniently inspected." This is a most important provision of the statute, and as we view it, the burden was on the defendant express company to prove that the required publication was made, if its purpose was to charge plaintiff with notice of the published rates and conditions upon which the colt was received for shipment. No case has been called to our attention, and we know of none, in which it has been held that a carrier may disregard the provisions of the act relating to publication of the schedules and still be entitled to every benefit that results from a proper compliance with the law. Under the facts of the case at bar we are of opinion that the shipper was not charged with notice of the valuation upon which the rate of carriage was based by anything which may have appeared in the schedule filed with the Interstate Commerce Commission, but which was not posted at the place of shipment as required by the Federal statute.

This brings us to a consideration of what may be deemed the controlling question in the case. Did the bill of lading or the contract of shipment between the parties limit the liability of the express company to $50 as the value of the colt? The rate charged was based upon this valuation, but the shipper did not declare that or any other value, and had no actual notice of the intention of appellant to limit its liability in this manner. It is contended for appellant that the contract of shipment gave the shipper notice that the actual value must be declared, and that failure to so declare gave the carrier the right to base the rate of carriage upon the minimum valuation fixed in the schedule of rates, and this having been done, the liability for loss or damages was likewise limited. We are not convinced that the cases relied on to sustain this contention are authority for the doctrine so broadly stated. The duty of the shipper to declare a value should be no greater than that of the carrier to ask such valuation to be declared. If both parties fail to observe the requirements of the rule,

it would seem to be unfair to visit the consequences upon one of them only. Appellant cites Great Northern Railway Co. v. O'Connor, 232 U. S. 508, to sustain its position in the present case. In that case the Supreme Court of the United States said inter alia: "If no value is stated the tariff rate applicable to such a state of facts applies. If, on the other hand, there are alternative rates based on value and the shipper names a value to secure the lower rate, the carrier, in the absence of something to show rebating or false billing, is entitled to collect the rate which applies to goods of that class, and if sued for their loss it is liable only for the loss of what the shipper had declared them to be in class and value." In the case at bar there were alternative rates based upon valuation, but the shipper did not declare a value to secure a lower rate, nor for any other purpose, so far as the record discloses. It is therefore clear that the excerpt from the opinion just quoted, which reads "and is sued for their loss it is liable only for the loss of what the shipper had declared them to be in class and value," has no application to a case in which the value has not been declared. Again, in construing the bill of lading due regard must be had for the schedule of rates upon which it was based. Under the head of "Valuation Charges" there are several paragraphs relating to rates and classification. In paragraph (a) it is provided that "the liability of the express company is limited to the value above stated unless a greater value is declared at time of shipment," and this is relied on by appellant as fixing the extent of its liability in the absence of a declaration of value by the shipper. The complete answer to this position is found in paragraph (d) wherein it is provided that: "These charges (referring to paragraphs a, b, c,) must not be applied to live animals, live birds or live stock (see paragraph g)." The only reasonable interpretation of this language is that paragraphs a, b and c have no reference to live animals which come under paragraph (g). But paragraph (g) contains no pro-

vision, as does paragraph (a), limiting the liability of the express company to the minimum valuation stated in the schedule of rates. We are not at liberty to read into this paragraph what it does not contain. Paragraph (a) evidently relates to charges for the shipment of inanimate objects, and the limitation written into this paragraph, must be regarded as referring to the subject to which it relates. The limitation was not written into paragraph (g) which relates to live animals, and it would be forcing the answer to say that a shipper of such animals had thus been given notice of a limited liability which the schedule applicable to such shipments did not contain.

We find nothing in the bill of lading, which is in the form of a contract between the parties, to defeat a recovery upon the basis of actual value under the facts of the present case. Clause one contains a direction to the shipper to value his stock, which valuation is to be inserted in the contract, presumably by the carrier; but neither the shipper nor the carrier complied with the direction and hence this provision cannot be relied on as a basis for fixing the rate of carriage or as a measure of liability when damages are sustained. Clause two states that the shipper demanded to be advised as to the rates to be charged and was offered alternative rates upon the basis of value declared; but no value was declared and none inserted in the paragraph relating to alternative rates. How then can it be said the shipper was charged with notice that the rate of carriage was fixed upon the basis of value declared, when no value was declared, and that the liability of the carrier was limited in the same manner? But we cannot give any more time to the discussion of the contract, and must be content to suggest that as we view it nothing therein contained in the light of what occurred between the parties is sufficient to preclude a recovery upon the basis of actual value. We concede that appellant could have limited its liability to $50, as is contended, but it did not do so in

the bill of lading by requiring the shipper to declare a value, nor by inserting in the clause relating to alternative rates any value whatever. In the following material respects the present case differs from those relied on by appellant: (1) The schedule of rates was not posted at Milwaukee; (2) the shipper was not required to declare a value; and (3) no value was inserted in the paragraph relating to alternative rates as applied to the shipment of live animals. Under these circumstances we cannot agree appellee was charged with notice that the rate of carriage was based upon a valuation of $50, and that the shipper contracted to have the liability of the carrier limited to this amount in the event of loss or injury.

At the trial appellant offered to prove that the failure to insert a valuation in clause 5 of the contract opposite the words "number and kind, value each," was an error of its agent at Milwaukee. The offer was refused and this has been assigned for error. It is too late to correct an error of this kind after the shipment had been made, the injury sustained, and the right of action accrued. Such correction would in effect alter the terms of a written contract not upon the ground of a mutual mistake but because an agent is willing to say that he did not follow the instructions of his principal in preparing it for execution. We know of no case that goes so far and cannot sustain this contention.

Judgment affirmed.